ORIGINAL

1   Jennifer A. Golinveaux (SBN: 203056)
    JGolinveaux@winston.com
2   WINSTON & STRAWN LLP
    101 California Street, 35th Floor
3   San Francisco, CA  94111-5840
    Telephone: (415) 591-1000
4   Facsimile: (415) 591-1400

5   Diana Hughes Leiden (SBN: 267606)
    DHLeiden@winston.com
6   WINSTON & STRAWN LLP
    333 S. Grand Ave., 38th Fl.
7   Los Angeles, CA 90071-1543
    Telephone: (213) 615-1700
8   Facsimile: (213) 615-1750

9   Counsel for Movants
    COX COMMUNICATIONS, INC.
10  and COXCOM, LLC

FILED

FEB 22 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

11              UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
12                 SAN FRANCISCO DIVISION

13  COX COMMUNICATIONS, INC. and      )
    COXCOM, LLC,                       )   Case No. _____- MISC
14                                     )
           Movants,                    )   CV 19 80 050 MISC
15                                     )
        v.                             )   Cox's Notice of Motion and Motion to
16                                     )   Compel Compliance with Subpoena *Duces
                                       )   Tecum*
17  MARKMONITOR, INC.                  )
                                       )   Date:    March 29, 2019
18         Respondent.                 )   Time:    To be set
    _____)   Place:   To be set

19

20          NOTICE is hereby given of the filing of this motion pursuant to Rule 45(d)(2)(B) of the

21  Federal Rules of Civil Procedure by Cox Communications, Inc. and CoxCom, LLC ("Cox"). This

22  motion seeks to compel Respondent, MarkMonitor, Inc. ("MarkMonitor"), to comply with a third-

23  party subpoena that Cox served on it on January 9, 2019 in a copyright infringement litigation

24  currently pending in the Eastern District of Virginia, styled *Sony Music Entm't, et al. v. Cox

25  Commc'ns, Inc., et al.*, Case No. 1:18-cv-00950-LO-JFA (the "*Sony* litigation"). Pursuant to Rule

26  45, Cox files the Motion in this District, where MarkMonitor is located.

27          Pursuant to Local Civil Rule 37-1(a), the undersigned counsel for Cox represents that

28  counsel for Cox met and conferred with counsel for MarkMonitor on February 4 and 13, 2019 with

                                        1

1   respect to the issues raised in this Motion, but that, as of the date of filing this Motion, MarkMonitor

2   has indicated that it is standing on its purported objections to two of Cox's requests and has not

3   produced documents responsive to the remaining requests nor committed to a timeline for doing so.

4        This Motion seeks an order from the Court directing MarkMonitor to fully comply with

5   Request Nos. 12 and 13 of subpoena and setting a deadline for MarkMonitor to produce all of the

6   documents MarkMonitor has agreed to produce.   As explained in greater detail below, those

7   materials are essential to Cox in its preparation of its defense in the *Sony* litigation.

8

9   Dated:  February 22, 2019                    WINSTON & STRAWN LLP

10                                          By:  _Jennifer Golinveaux_
                                                Jennifer A. Golinveaux
11                                              JGolinveaux@winston.com
                                                WINSTON & STRAWL LLP
12                                              101 California Street, 35th Floor
                                                Telephone: (415) 591-1000
13                                              Facsimile: (415) 591-1400

14                                              Diana Hughes Leiden
                                                DHLeiden@winston.com
15                                              WINSTON & STRAWN LLP
                                                333 S. Grand Ave., 38th Fl.
16                                              Los Angeles, CA 90071-1543
                                                Telephone: (213) 615-1700
17                                              Facsimile: (213) 615-1750

18                                              Counsel for Movants COX
                                                COMMUNICATIONS, INC. and COXCOM,
19                                              LLC

20

21

22

23

24

25

26

27

28

2

1

**TABLE OF CONTENTS**

2
                                                                                                        **Page**

3
INTRODUCTION ........................................................................................................1

4
FACTUAL BACKGROUND .......................................................................................3

5
I.     COX'S SUBPOENA AND MARKMONITOR'S RESPONSE.............................3

6
II.    THE STATUS OF DISCOVERY IN THE *SONY* LITIGATION .........................5

7
III.   THE PRODUCTION OF SOURCE CODE IN THE RELATED PREDECESSOR *BMG*
       LITIGATION...........................................................................................................7

8

9
ARGUMENT .................................................................................................................9

10
I.     MARKMONITOR HAS WAIVED ANY OBJECTIONS TO THE SUBPOENA................9

11
II.    MARKMONITOR'S OBJECTIONS ARE WITHOUT MERIT AND IT SHOULD BE
       COMPELLED TO PERMIT INSPECTION OF THE REQUESTED SYSTEM(S) AND
       RELEVANT REVISION HISTORY AND SOURCE CODE ................................11

12

13
III.   MARKMONITOR SHOULD BE COMPELLED TO IMMEDIATELY PRODUCE
       THOSE DOCUMENTS WHICH IT HAS AGREED TO PRODUCE .................14

14
CONCLUSION.............................................................................................................14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*BMG Rights Mgmt. (US) LLC v. Cox Communications, Inc.*,
   1:14-cv-01611 (LO-JFA) (E.D. Va.) ...........................................................................5

*Chea v. Best Buy Stores, L.P.*,
   No. 14-CV-00020-HSG, 2015 WL 12806553 (N.D. Cal. Mar. 10, 2015) ...................10

*In re Facebook PPC Advert. Litig.*,
   No. C09-03043 JF HRL, 2011 WL 1324516 (N.D. Cal. Apr. 6, 2011) .......................13

*Gonzales v. Google, Inc.*,
   234 F.R.D. 674 (N.D. Cal. 2006)...........................................................................12, 13

*Goodman v. United States*,
   369 F.2d 166 (9th Cir. 1966) .....................................................................................11

*Holman v. Experian Info. Solutions, Inc.*,
   No. 11–cv–00180 CW (DMR), 2012 WL 2501085 (N.D. Cal. June 27, 2012) ..........13

*Landon v. Ernst & Young LLP*,
   No. C08-02853 JF (HRL), 2009 WL 4723708 (N.D. Cal. Dec. 2, 2009)...............10, 11

*McCoy v. Sw. Airlines Co.*,
   211 F.R.D. 381 (C.D. Cal. 2002)................................................................................10

*Negotiated Data Sols. LLC v. Dell, Inc.*,
   No. C09-80012MISC JF HR, 2009 WL 733876 (N.D. Cal. Mar. 17, 2009)...............12

*Nelson v. Hartford Life Ins. Co.*,
   No. C-13-04196 CRB (DMR), 2014 WL 12611299 (N.D. Cal. Sept. 29, 2014) ........10

*Pasadena Oil & Gas Wyoming LLC v. Montana Oil Properties Inc.*,
   320 F. App'x 675 (9th Cir. 2009) ...............................................................................13

*Phillips v. City of Fairfield*,
   2006 WL 2868966 (E.D. Cal. Oct. 6, 2006)................................................................11

*Poturich v. Allstate Ins. Co.*,
   No. EDCV150081GWKKX, 2015 WL 12766048 (C.D. Cal. Aug. 11, 2015)............10

*Richmark Corp. v. Timber Falling Consultants*,
   959 F.2d 1468 (9th Cir. 1992) .....................................................................................9

*Schoonmaker v. City of Eureka*,
   No. 17-CV-06749-VC (RMI), 2018 WL 5829851 (N.D. Cal. Nov. 7, 2018) ..............9

ii

*Sony Music Entm't, et al. v. Cox Commc'ns, Inc., et al.,*
    Case No. 1:18-cv-00950-LO-JFA (E.D. Va.) ........................................................................ *passim*

*Trevino v. ACB Am., Inc.,*
    232 F.R.D. 612 (N.D. Cal. 2006) .............................................................................................13

**Other Authorities**

Fed. R. Civ. P. 45(d)(2)(B) ......................................................................................................3, 10

**INTRODUCTION**

Cox subpoenaed MarkMonitor in the underlying litigation because its system was used to detect alleged downloads by Cox's Internet subscribers that serve as the exclusive basis for the plaintiffs' secondary copyright infringement case against Cox.  MarkMonitor waived any objections to the subpoena by failing for timely respond without any good cause, and its objections are meritless in any event because its confidentiality concerns are resolved by the strict Protective Order governing access to source code.  Cox's Motion to Compel should be granted.

Cox, an Internet service provider, has been sued for copyright infringement by 58 individual plaintiffs, including some of the largest record labels and music publishers in the world (the "*Sony* plaintiffs").  *Sony Music Entm't, et al. v. Cox Commc'ns, Inc., et al.*, Case No. 1:18-cv-00950-LO-JFA (E.D. Va.) (the "*Sony* litigation").  The *Sony* plaintiffs allege that Cox's Internet subscribers infringed 10,729 of their works by downloading them without authorization through BitTorrent or other peer-to-peer file sharing sites available on the Internet between 2013 and 2014.  The *Sony* plaintiffs seek to hold Cox liable for vicarious and contributory copyright infringement in connection with its provision of Internet service to these subscribers.  The *Sony* plaintiffs seek in excess of $1.6 billion in statutory damages for copyright infringement against Cox.

Years before filing this suit against Cox, the *Sony* plaintiffs, through the concerted efforts of the record label plaintiffs' collective agent the Recording Industry Association of America ("RIAA"), engaged MarkMonitor, a software company that provides a range of services including detecting and monitoring online piracy, to track the activities of Cox subscribers on peer-to-peer file sharing sites.  The *Sony* plaintiffs then authorized MarkMonitor to prepare copyright infringement notices to send to Cox for instances it observed of alleged infringement of the *Sony* plaintiffs' works.

To establish that each and every alleged direct copyright infringement occurred—a prerequisite to hold Cox secondarily liable for the alleged infringement—the *Sony* plaintiffs will rely on both MarkMonitor's monitoring data and its notices.  Thus, the ***reliability*** and ***accuracy*** of MarkMonitor's system in generating this information is at the heart of the *Sony* plaintiffs' claims and, critically, Cox's defenses. As Cox has informed MarkMonitor, Cox's retained technical expert

1     must review MarkMonitor's system, including the source code and revision history, in order to
2     assess the system's accuracy.

3         Accordingly, on January 9, 2019, Cox served a third-party subpoena on MarkMonitor
4     seeking a copy of each version of MarkMonitor's system used to target Cox's subscribers and send
5     notices and all documents regarding the system's revision history and associated source code (the
6     "Subpoena").   Cox also sought other categories of documents including, but not limited to,
7     communications between MarkMonitor and the *Sony* plaintiffs, the RIAA, Cox, and other relevant
8     third parties; data comprising its observations of alleged instances of infringements by Cox
9     subscribers; copies of the files downloaded by Cox subscribers; and technical analyses concerning
10    its system and operating materials.  While MarkMonitor's objections to the Subpoena were due on
11    January 23, 2019, MarkMonitor failed to serve any objections or responses until February 14,
12    2019—more than three weeks late, thereby waiving any objections.

13        While MarkMonitor has ultimately agreed to produce documents responsive to many of
14    Cox's requests, it flatly refuses to make available for inspection its system used to target Cox's
15    subscribers and documents regarding its revision history and associated source code, claiming that
16    doing so would cause it to suffer irreparable harm in light of the system's confidential and trade
17    secret properties.

18        As detailed below, there is no basis for MarkMonitor to resist the production of this
19    information because it is absolutely fundamental to the claims and defenses in the *Sony* litigation
20    and because MarkMonitor's confidentiality and trade secret objections (even if they had not been
21    waived) are more than addressed by the protective order in the *Sony* litigation, which is specifically
22    tailored to protect the confidentiality of source code.  Furthermore, MarkMonitor has refused to
23    commit to a timeline for producing the documents it has agreed to produce, despite Cox's repeated
24    requests given the expedited case schedule set in the *Sony* litigation, which is pending in the Eastern
25    District of Virginia "Rocket Docket."   Cox, therefore, respectfully requests the Court compel
26    MarkMonitor to comply fully with the Subpoena.

27

28

**NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM***

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FACTUAL BACKGROUND

### I.  COX'S SUBPOENA AND MARKMONITOR'S RESPONSE

Plaintiffs have represented in the *Sony* litigation that each and every infringement alleged against Cox is predicated on BitTorrent downloads detected by, and notifications generated by, MarkMonitor's system and sent to Cox.[1]  Thus, when the *Sony* plaintiffs served their initial disclosures, they disclosed MarkMonitor as having discoverable information concerning its "observation of infringements by Cox subscribers; infringement of Plaintiffs' copyrighted works by Cox subscribers; notices of copyright infringement sent to Cox."[2]  The *Sony* plaintiffs also indicated in their initial disclosures that their counsel also represented MarkMonitor.  *Id.*

When discovery commenced on November 19, 2018, Cox served its first set of document requests on the *Sony* plaintiffs, seeking (among other things) a copy of MarkMonitor's software and source code at issue.[3]  On December 19, 2018, the *Sony* plaintiffs represented that they would not produce this information on the basis that it was not in their possession, custody, or control.  *Id.*

On January 7, 2019, counsel for Cox served the Subpoena on the *Sony* plaintiffs' counsel in light of Cox's understanding that they also represented MarkMonitor.[4]  On January 8, 2019, the *Sony* plaintiffs' counsel informed Cox's counsel that Cox should instead serve the Subpoena directly on MarkMonitor's in-house counsel, which Cox did that same day.[5]  On January 9, 2019, MarkMonitor's in-house counsel accepted service of the Subpoena via email.[6]

MarkMonitor failed to respond to the Subpoena or serve any objections by the January 23, 2019 deadline to do so.  *See* Fed. R. Civ. P. 45(d)(2)(B).  Instead, several days after the deadline,

---

[1] *See, e.g.*, Declaration of Diana Hughes Leiden ("Leiden Decl."), Ex. 8 at ¶ 94 ("Plaintiffs' infringement notices concerned clear and unambiguous infringing activity by Cox's subscribers— that is, unauthorized downloading and distribution of copyrighted music. There was no legal justification for Cox's subscribers to download or distribute digital copies of Plaintiffs' sound recordings and musical compositions to thousands or millions of strangers on the Internet."), ¶ 106 (alleging that Cox is secondarily liable for its subscribers' direct infringements—i.e., their acts of downloading the *Sony* plaintiffs' works without authorization via BitTorrent); *see also* Leiden Decl., Ex. 9 at Resp. to Interrogatory No. 4 (identifying that MarkMonitor generated all of the notices received by Cox).
[2] *See* Leiden Decl., Ex. 1.
[3] *See* Leiden Decl., Ex. 10.
[4] Leiden Decl., Ex. 2.
[5] Leiden Decl., ¶ 3 & Exs. 2-3.
[6] Leiden Decl., Ex. 3.

3

1   on January 27, 2019, MarkMonitor's outside counsel emailed Cox's counsel and requested a time

2   to speak regarding Cox's Subpoena.[7] On February 4, 2019 (the soonest date that MarkMonitor's

3   counsel was available and willing to confer), counsel for Cox and counsel for MarkMonitor

4   discussed the purpose of the Subpoena, MarkMonitor's failure to timely respond and Cox's

5   reservation of rights, and what MarkMonitor was willing to produce.[8] Counsel for Cox impressed

6   upon counsel for MarkMonitor the need to obtain documents quickly in light of the expedited

7   discovery schedule set in the *Sony* litigation and explained the terms of the Stipulated Protective

8   Order in that case (the "Protective Order") when MarkMonitor's counsel raised MarkMonitor's

9   confidentiality concerns.  *Id.*

10   On February 13, 2019, counsel for Cox and MarkMonitor held another meet and confer call.[9]

11   This time, counsel for MarkMonitor stated that MarkMonitor would produce documents in response

12   to many of Cox's requests but would not agree to produce or make available a copy of its system

13   used to target Cox's subscribers or all documents regarding the system's revision history and

14   associated source code.  *Id.* Cox requested that MarkMonitor provide a timeline for producing the

15   documents it did not find objectionable, in light of the expedited case schedule set in the *Sony*

16   litigation, and MarkMonitor requested more time to do so.  *Id.* During these conferences, Cox never

17   granted MarkMonitor an extension of time to respond to the Subpoena and expressly reserved all

18   rights with respect to the timing of MarkMonitor's response.[10]

19   On February 14, 2019, MarkMonitor finally served written responses and objections to the

20   Subpoena, more than three weeks late.[11] MarkMonitor states that Cox's requests for a copy of its

21   system used during the *Sony* plaintiffs' claim period (2013-2014) and all documents regarding its

22   revision history and associated source code are objectionable because they seek "proprietary, trade

23   secret, and other confidential information, and the actual or potential harm and damages that may

24   and/or would likely result from the production or inspection of such information from this nonparty

25   is irreparable and not adequately addressed or safeguarded by the protective order presently in place

26   _____

[7] Leiden Decl., Ex. 4 at 17-18.

27   [8] Leiden Decl., ¶ 6.
[9] Leiden Decl., ¶ 7.

28   [10] Leiden Decl., ¶ 8.
[11] Leiden Decl., Ex. 5.

1 in this matter."[12] MarkMonitor agreed to produce documents responsive to Cox's Requests Nos. 1-

2 2, 6-11, and 14-24, but did not provide a timeline for doing so. *Id.*

3 The next day, counsel for Cox sent MarkMonitor's counsel a letter that explained in detail

4 (1) why its retained expert, Dr. Nick Feamster, a Professor of Computer Science at Princeton

5 University, requires access to the system used to target Cox, the revision history, and source code;

6 (2) that Dr. Feamster was willing to travel to MarkMonitor's offices, or otherwise review the code

7 in a secured environment, to allay any confidentiality concerns; (3) that the Protective Order

8 specifically provides for the confidential treatment of source code; (4) the relevance of the requested

9 information and the fact that the Court in the *Sony* litigation had already ordered the *Sony* plaintiffs

10 to produce many MarkMonitor-related documents and acknowledged that MarkMonitor would be

11 subject to third-party discovery;[13] and (5) the fact that another rights monitoring company's source

12 code had been ordered to be produced in another copyright case brought against Cox on the same

13 theory, *BMG Rights Mgmt. (US) LLC v. Cox Communications, Inc.*, 1:14-cv-01611 (LO-JFA) (E.D.

14 Va.) (the "*BMG* litigation").[14]

15 As of the time of filing this Motion, MarkMonitor had not responded to this letter, produced

16 any responsive documents, nor committed to a timeline for doing so.[15]

17 **II.    THE STATUS OF DISCOVERY IN THE *SONY* LITIGATION**

18 The *Sony* litigation is pending in the Eastern District of Virginia, Alexandria Division—the

19 so-called "Rocket Docket." As noted above, discovery commenced at the end of November 2018.

20 Opening expert reports are due on April 10, 2019, responsive reports on May 8, 2019, and rebuttal

21 reports by May 30, 2019. The end close of fact and expert discovery is June 14, 2019. Motions for

22 summary judgment are due by July 26, 2019. Trial will be set for the late summer or early fall.[16]

23 Cox has retained Dr. Feamster to opine on, among other things, the functionality and

24 reliability of the MarkMonitor system. This analysis is critical to Cox's defenses, given the *Sony*

---

[12] Leiden Decl., Ex. 5 at Resp. to Request Nos. 12 and 13.
[13] *See* Leiden Decl., Ex. 19.
[14] *See* Leiden Decl., Ex. 6; *see also id.* Exs. 12 & 13 (orders compelling the production of the Rightscorp source code). The *BMG* litigation was presided over by the same United States District Court Judge and Magistrate Judge as the instant *Sony* litigation.
[15] Leiden Decl., Ex. 7 & ¶ 12.
[16] *See* Leiden Decl., Ex. 11.

NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM*

plaintiffs' representations that MarkMonitor detected and generated the notices sent to Cox for every single alleged BitTorrent download that forms the basis of the purported direct infringement in this case on which the *Sony* plaintiffs base their entire theory of Cox's alleged secondary liability. As set forth in his declaration accompanying this Motion, Dr. Feamster must review the system and the source code used to identify the alleged instances of infringement and to generate the copyright infringement notices that were sent to Cox, and which are the *Sony* plaintiffs' purported evidence of direct infringement.[17] While Dr. Feamster will review any existing technical analyses of this system and other produced MarkMonitor-related documents, Dr. Feamster requires access to a copy of each version of the system used during the *Sony* plaintiffs' claim period and all documents regarding the revision history and associated source code.[18] This is because, as Cox informed MarkMonitor, Dr. Feamster intends to review and analyze the functionality of MarkMonitor's system over the span of Plaintiffs' claim period, which runs from February 2013 to November 2014.[19] A review of the source code, which is version-controlled and time-stamped, is the only way to adequately conduct this forensic analysis.[20] Technical documentation often inaccurately describes the functioning of the software and does not line up with how the software functioned at specific points in time. *Id.*

In light of this, Dr. Feamster has signed the Protective Order, which is specifically tailored for handling sensitive source code, providing:

> *Highly Confidential – Source Code information*: A producing party, including any party to this action and any nonparty producing information or material voluntarily or pursuant to a subpoena or court order, shall designate as HIGHLY CONFIDENTIAL – SOURCE CODE only non-public computer object code or other executable code or source code or similar programming statements or instructions that in general are converted into machine language by compilers, assemblers, or interpreters.[21]

The Protective Order further provides that the only people permitted to access Highly Confidential

---

[17] Dr. Nick Feamster details the specific reasons he requests this information is his declaration, filed concurrently herewith. *See* Declaration of Dr. Nick Feamster ("Feamster Decl."), ¶¶ 4-7.
[18] Feamster Decl., ¶¶ 4-7.
[19] Leiden Decl., Ex. 6; *see also* Feamster Decl., ¶ 7.
[20] Feamster Decl., ¶ 7.
[21] Feamster Decl., Ex. 2, § 2(c)(ii).

– Source Code information are the parties' outside counsel and retained experts who are subject to a four-day notice and objection period.[22]  Critically, the Protective Order limits the procedure by which those granted access to the Highly Confidential Source Code shall review the code stating:

> The source code shall be made available for inspection on a secured computer in a secured room, and the inspecting party shall not copy, remove, or otherwise transfer any portion of the source code onto any recordable media or recordable device. The designator may visually monitor the activities of the inspecting party's representative during any source code review, but only to ensure that there is no unauthorized recording, copying, or transmission of the source code.[23]

Cox has provided notice of Dr. Feamster to both the *Sony* plaintiffs and MarkMonitor.[24]

## III.  THE PRODUCTION OF SOURCE CODE IN THE RELATED PREDECESSOR *BMG* LITIGATION

The system and source code responsible for detecting alleged infringement and generating copyright infringement notices was produced in the *BMG* litigation, a case which the *Sony* plaintiffs have repeatedly characterized as closely similar to this case.  *See infra* at 10-11.  There, BMG (a rights holder) alleged that Cox's subscribers infringed nearly 1,200 of its works by illegally downloading them on peer-to-peer file sharing sites between 2012 and 2014 and sought to hold Cox secondarily liable for this alleged infringement.[25]  In order to track Cox subscribers, BMG engaged Rightscorp, Inc., a rights monitoring vendor that provides some of the same services as MarkMonitor.

In the *BMG* litigation, Magistrate Judge Anderson recognized that technical analyses of the system used to generate the copyright infringement notices at issue were essential to BMG's claims and Cox's defenses.  For example, when Cox's expert discovered that Rightscorp may have destroyed earlier versions of its system used to generate the relevant copyright infringement notices, Judge Anderson recommended the imposition of an adverse interference against BMG and held that "*there can be no serious dispute that the manner in which the Rightscorp system operates to*

---

[22] Feamster Decl., Ex. 2, § 5(b).
[23] Feamster Decl., Ex. 2, § 6(a).
[24] Leiden Decl., ¶ 11.
[25] A 2015 jury verdict in BMG's favor was later overturned by the Fourth Circuit and the parties subsequently settled on the eve of re-trial.

*identify suspected infringers of plaintiffs' copyrighted works is material evidence*.   Plaintiffs emphasize their reliance on the Rightscorp system in their amended complaint *and their entire damages case is built on the premise that the Rightscorp system accurately identified infringers of plaintiffs' copyrighted works from February 2012 through November 24, 2014*."[26]

When recommending this sanction based on the spoliation of the relevant source code, Judge Anderson acknowledged that the reliability of the system that generated the notices was critical to Cox's defense:

> Defendants assert that they are entitled to know how the Rightscorp system operated during the relevant time period so they can test the accuracy of the notices that were generated and sent to them from Rightscorp. Defendants claim that if the notices are not accurate (*i.e.* the subscribers had not infringed plaintiffs' copyrights) then the defendants cannot be held responsible for any contributory or vicarious copyright infringement.[27]

Judge Anderson further noted that "deposition testimony provided by Rightscorp is a poor substitute for a documented, historical version of the Rightscorp system." *Id.*[28] Here, like in *BMG*, Cox "cannot be held responsible for any contributory or vicarious copyright infringement" if the notices generated by MarkMonitor were inaccurate or the analysis otherwise shows that "the subscribers had not infringed plaintiffs' copyrights."

In addition, at trial in the *BMG* litigation, the Court ruled that "[t]he evidence of the infringement is not going to be the [copyright infringement] notice itself.   It's going to be Rightscorp's software system identifying … the hits that are received based on its code."[29] The Court explained that "*the jury is going to have to make the decision as to whether [the software] accurately identifies infringements*.   Clearly that's a center foundation of the case."[30] Counsel for BMG agreed, stating: "if the jury believes that the code works, then those 1.8 million [copyright infringement] notices are accurate records of infringement.   And if it doesn't, they may say, well, only 1.7 of them or 1.6 or 1.5 or none of them are accurate evidence of infringement."[31] Both

---

[26] Leiden Decl., Ex. 14 at 3 (emphasis added).
[27] Leiden Decl., Ex. 14 at 3.
[28] The Court ultimately provided an instruction on this missing source code.
[29] Leiden Decl., Ex. 15 at 230:9-12.
[30] Leiden Decl., Ex. 15 at 231:2-5.
[31] Leiden Decl., Ex. 15 at 231:15-19.

1   parties' technical experts ultimately testified for a total of nearly two days covering the substance

2   of their respective reports that dealt almost in their entirety with the functionality of Rightscorp's

3   system used to generate notices—analyses that were primarily based on their review of the system's

4   source code.[32]

5           The *Sony* plaintiffs have repeatedly asserted similarities between the *BMG* and *Sony*

6   litigations.  Throughout their complaint, the *Sony* plaintiffs cite to the *BMG* litigation as a related

7   case and rely on both its factual and legal findings.[33]  Similarly, in opposing Cox's motion to transfer

8   the case to another district, the *Sony* plaintiffs argued that "[t]he overlap between *BMG v. Cox* and

9   this case is substantial. The defendants are the same, the misconduct is the same, the time period is

10  the same, and the theories of liability are the same."[34]  The *Sony* plaintiffs have additionally used

11  the similarities between the cases throughout discovery, arguing in a motion to compel that the *BMG*

12  litigation "involved the same claims and same defendants."[35]

13          While the *Sony* litigation involves different plaintiffs and different works than the *BMG*

14  litigation, one thing remains the same—analysis of the system used to identify the underlying

15  alleged direct infringements will be "a center foundation" of the *Sony* litigation.

16                                          **ARGUMENT**

17  **I.      MARKMONITOR HAS WAIVED ANY OBJECTIONS TO THE SUBPOENA**

18          By failing to timely object to any of the requests in the Subpoena, MarkMonitor has waived

19  any objection to permitting the inspection of its system.

20          *First*, MarkMonitor waived any objections to the Subpoena by failing to timely serve them.

21  Ninth Circuit law is clear that "failure to object to discovery requests within the time required

22  constitutes a waiver of any objection," and this waiver applies equally to parties and non-parties.

23  *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992); *Schoonmaker*

24  *v. City of Eureka*, No. 17-CV-06749-VC (RMI), 2018 WL 5829851, at *1 (N.D. Cal. Nov. 7, 2018)

25

---

26  [32] The *Sony* plaintiffs have retained the same expert who BMG utilized to analyze the notice generating system at issue in that case—Barbara Frederickson-Cross.

27  [33] Leiden Decl., Ex. 8, ¶ 6.  It should also be noted that the *Sony* plaintiffs filed this case as a "related case," under applicable federal rules.  *See* Leiden Decl., Ex. 16.

28  [34] Leiden Decl., Ex. 17 at 5.
    [35] Leiden Decl., Ex. 18 at 1-2.

NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM*

(granting the plaintiff's motion to compel upon finding that a non-party's failure to timely serve objections operated as a waiver, and ordering the production of all responsive documents).  Courts will consider untimely objections from non-parties only if there are unusual circumstances and good cause for the delay.  *McCoy v. Sw. Airlines Co.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002).  "Courts have found unusual circumstances where: (1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery; (2) the subpoenaed witness is a non-party acting in good faith; and (3) counsel for the witness and counsel for the subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenged the legal basis for the subpoena."  *Id.* (waiving non-party's objections upon not finding good cause or any of the unusual circumstances); *see also Poturich v. Allstate Ins. Co.*, No. EDCV150081GWKKX, 2015 WL 12766048, at *2 (C.D. Cal. Aug. 11, 2015) (granting the plaintiffs' motion to compel non-party to comply with subpoena and finding that non-party waived all objections to it for failing to timely respond).

"In determining whether a party has good cause, the court will consider factors such as the length of the delay, the reason for the delay, bad faith, prejudice to the propounding party, the appropriateness of the requests, and whether waiver would result in an excessively harsh result."  *Landon v. Ernst & Young LLP*, No. C08-02853 JF (HRL), 2009 WL 4723708, at *1 (N.D. Cal. Dec. 2, 2009).  A court is less inclined to find good cause where a party fails to seek an extension.  *See Nelson v. Hartford Life Ins. Co.*, No. C-13-04196 CRB (DMR), 2014 WL 12611299, at *1 (N.D. Cal. Sept. 29, 2014); *Chea v. Best Buy Stores, L.P.*, No. 14-CV-00020-HSG, 2015 WL 12806553, at *1 (N.D. Cal. Mar. 10, 2015).

Here, MarkMonitor's in-house counsel accepted service of Cox's Subpoena on January 9, 2019.  But it was not until January 27, 2019, several days *after* its deadline to respond or object, that MarkMonitor's outside counsel contacted Cox's counsel requesting a time to speak regarding the Subpoena.  When doing so, he did not request an extension, even though MarkMonitor's deadline to respond or object had already passed.  *See* Fed. R. Civ. P. 45(d)(2)(B) (objections "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served").  Moreover, he did not explain MarkMonitor's delay.  As noted above, courts are less inclined to find good cause when a party fails to seek an extension or justify the delay.  *See Chea*,

10

No. 14-CV-00020-HSG, 2015 WL 12806553, at *1; *Landon*, No. C08-02853 JF (HRL), 2009 WL 4723708, at *1.

MarkMonitor's failure to seek an extension at any point notwithstanding, there is no good faith basis for its continued delay in turning over the documents it has already agreed to produce. MarkMonitor has never articulated any particular difficulty or burden associated with gathering responsive documents such that a lengthy delay would be appropriate.

*Second*, and as discussed in more detail below, Cox's outstanding requests are entirely appropriate given the nature of this case. The *Sony* plaintiffs must prove that nearly 11,000 individual works were infringed over a 22-month period by specific Cox subscribers. Their only proof that this was done is the data and the copyright infringement notices generated by MarkMonitor's system. It is, therefore, critical that Cox be permitted to analyze that system and documents regarding the revision history and related source code to determine whether MarkMonitor's system accurately detected alleged instances of infringement on peer-to-peer file sharing sites. As Cox explained to MarkMonitor, there is no effective way to do this other than having its technical expert Dr. Feamster examine the source code.[36]

## II. MARKMONITOR'S OBJECTIONS ARE WITHOUT MERIT AND IT SHOULD BE COMPELLED TO PERMIT INSPECTION OF THE REQUESTED SYSTEM(S) AND RELEVANT REVISION HISTORY AND SOURCE CODE

Even if the Court were to consider MarkMonitor's late objections, MarkMonitor should nevertheless be compelled to permit inspection of its system used during the *Sony* plaintiffs' claim period and all documents regarding its revision history and associated source code, as "[t]he burden of showing that a subpoena is unreasonable and oppressive is upon the party to whom it is directed." *Phillips v. City of Fairfield*, 2006 WL 2868966 (E.D. Cal. Oct. 6, 2006) (quoting *Goodman v. United States*, 369 F.2d 166, 169 (9th Cir. 1966)). MarkMonitor is unable to establish that here, particularly given that "[a] district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder. Where relevance is in doubt … the court should be permissive."

---

[36] *See* Feamster Decl., ¶¶ 4-7.

1 | *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 681 (N.D. Cal. 2006).

2 Here, there is no question that the requested information is relevant. As set forth above, both
3 the Court and the plaintiffs in the *Sony* litigation have indicated that evidence relating to
4 MarkMonitor will be critical to the *Sony* plaintiffs' affirmative case and Cox's defenses. *See supra*
5 9-11. Simply put, the determination of every alleged direct copyright infringement relies on the
6 integrity of MarkMonitor's system. Indeed, the *Sony* plaintiffs have agreed to produce a number of
7 categories of documents related to MarkMonitor, including technical analyses of its purported
8 accuracy in their possession, custody, or control.[37] The Court in the *Sony* litigation further ordered
9 the plaintiffs to produce their agreements with MarkMonitor and documents and communications
10 responsive to a series of MarkMonitor-related search terms.[38] MarkMonitor does not dispute that
11 Cox is seeking relevant information, agreeing to produce documents in response to a large portion
12 of Cox's Subpoena but withholding the most critical pieces—its actual system used to target Cox
13 and documents regarding the revision history and associated source code—based only upon belated
14 confidentiality and trade secret objections.

15 MarkMonitor has also not explained how the inspection of this information poses any undue
16 time or monetary expense. MarkMonitor is an established company whose client (or client's
17 representative) here was the RIAA—the leading music industry trade organization. The RIAA, on
18 behalf of 58 individual plaintiffs, including behemoths such as Sony Music Entertainment,
19 Universal Music Group, and Warner Brothers, utilized MarkMonitor for years to orchestrate and
20 ultimately prosecute a $1.6 billion suit against Cox. MarkMonitor has never articulated that its
21 historical systems are not maintained and accessible, nor any burden in permitting Cox's technical
22 expert access under the terms of the Protective Order.

23 Furthermore, MarkMonitor's claim that allowing access to its source code by Dr. Feamster
24 will cause it irreparable harm lacks any merit. As a preliminary matter, "[r]eluctance to produce
25 sensitive information … is in itself an insufficient basis on which to deny discovery of that
26 information under appropriate protection from divulgement to competitors." *Negotiated Data Sols.*

27

28 | [37] Leiden Decl., Ex. 19.
[38] Leiden Decl., Ex. 19.

1  *LLC v. Dell, Inc.*, No. C09-80012MISC JF HR, 2009 WL 733876, at *3 (N.D. Cal. Mar. 17, 2009)

2  (compelling non-party's production of source code upon finding that the detailed information

3  contained in the code was relevant, "not duplicative or obtainable through other sources[,]" and did

4  not pose an undue burden); *see also In re Facebook PPC Advert. Litig.*, No. C09-03043 JF HRL,

5  2011 WL 1324516, at *3 (N.D. Cal. Apr. 6, 2011) (ordering defendants to produce source code for

6  plaintiffs' expert's review upon plaintiffs' argument that it was "relevant and necessary to Plaintiffs'

7  claims" and because it would be protected by the stipulated protective order); *Trevino v. ACB Am.,*

8  *Inc.*, 232 F.R.D. 612, 617 (N.D. Cal. 2006) (observing that protective orders are used to protect

9  trade secrets, such as confidential information in business agreements, and such discovery is

10  "virtually always ordered" "once the moving party has established relevance and necessity").[39]

11  Here, the information sought is highly relevant and not obtainable by Cox from other parties or non-

12  parties to the *Sony* litigation.

13  Moreover, the Protective Order is specifically tailored to protect the confidentiality of source

14  code. *See supra* at 7-8. Only retained experts subject to a notice and objection period are permitted

15  access to it. Dr. Feamster has signed the Protective Order and Cox has additionally provided notice

16  to both the *Sony* plaintiffs and MarkMonitor. Furthermore, Dr. Feamster has offered to travel to

17  MarkMonitor's San Francisco offices, or otherwise work on a secured laptop, to ensure that

18  MarkMonitor's source code remains safe. MarkMonitor's objections that it will be harmed are thus

19  unfounded. It should be compelled to permit inspection of the system in use during the *Sony*

20  plaintiffs' claim period and all documents regarding the revision history and associated the source

21  code.

---

22  [39] *See also Gonzales*, 234 F.R.D. at 686 (compelling production in response to a subpoena and

23  holding that "the selective disclosure of protectable trade secrets contained in source code is not *per se* unreasonable and oppressive, when appropriate protective measures are imposed") (citations

24  omitted); *Pasadena Oil & Gas Wyoming LLC v. Montana Oil Properties Inc.*, 320 F. App'x 675, 677 (9th Cir. 2009) (stating that "[u]nder federal law, there is no absolute privilege for trade secrets;

25  instead, courts weigh the claim to privacy against the need for disclosure in each case, and district courts can enter protective orders allowing discovery but limiting the use of the discovered

26  documents" and ordering defendants to produce the leases in question subject to a protective order) (citations omitted); *Holman v. Experian Info. Solutions, Inc.*, No. 11–cv–00180 CW (DMR), 2012

27  WL 2501085, at *6 (N.D. Cal. June 27, 2012) (ordering the production of documents in unredacted form where the redactions were claimed to protect non-responsive, highly sensitive business

28  information, and finding that such information was sufficiently protected by the protective order in the case).

1   **III.   MARKMONITOR SHOULD BE COMPELLED TO IMMEDIATELY**
2   **PRODUCE THOSE DOCUMENTS WHICH IT HAS AGREED TO PRODUCE**

3   MarkMonitor should be further compelled to immediately produce those documents that it

4   agreed to produce in its Responses and Objections to Cox's Subpoena.[40]   Specifically, MarkMonitor

5   agreed to produce "all relevant and non-privileged documents, to the extent they exist, in its

6   possession, custody or control, that are responsive to a reasonable interpretation" to Cox's Requests

7   Nos. 1-2, 6-11, and 14-24.[41]   But MarkMonitor has not yet produced any documents and has refused

8   to commit to a timeline to do so.  Given the expedited schedule in the *Sony* litigation in the Eastern

9   District of Virginia and the need for Cox's technical expert to review these documents, in addition

10  to inspecting MarkMonitor's system, MarkMonitor should be ordered to produce these documents

11  immediately.

12  **CONCLUSION**

13  Based on the foregoing, Cox respectfully requests the Court grant its motion to compel and

14  order MarkMonitor to: (1) comply fully with Request Nos. 12 and 13 of the Subpoena by permitting

15  inspection of each version of its system used during the *Sony* plaintiffs' claim period including all

16  documents regarding the revision history and associated source code no later than March 15, 2019;

17  and (2) produce all remaining responsive documents no later than March 15, 2019.

18

19  Dated:  February 22, 2019                WINSTON & STRAWN LLP

20                                          By: _____
                                                Jennifer A. Golinveaux
21                                              JGolinveaux@winston.com
                                                WINSTON & STRAWL LLP
22                                              101 California Street, 35th Floor
                                                Telephone: (415) 591-1000
23                                              Facsimile: (415) 591-1400

24                                              Diana Hughes Leiden
                                                DHLeiden@winston.com
25                                              WINSTON & STRAWN LLP
                                                333 S. Grand Ave., 38th Fl.
26                                              Los Angeles, CA 90071-1543
                                                Telephone: (213) 615-1700
27

28  [40] Leiden Decl., Ex. 5.
    [41] *Id.*

14

1    Facsimile: (213) 615-1750

2    Counsel for Movants
     COX COMMUNICATIONS, INC. and
3    COXCOM, LLC

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15

1
2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

3
4
5
6
7
8

COX COMMUNICATIONS, INC. and
COXCOM, LLC,

     Movants,

         v.

MARKMONITOR, INC.

     Respondent.

)
)
)
)
)
)
)
)
)
)

Case No. _____- MISC

**[Proposed] Order**

9           THIS MATTER having come before the Court on the Motion to Compel Compliance

10 with Subpoena Duces Tecum filed by Cox Communications, Inc. and CoxCom, LLC, and good

11 cause having been shown, it is hereby

12           ORDERED that the Motion is GRANTED; and it is further

13           ORDERED that the Respondent, MarkMonitor, Inc., (1) comply fully with Request

14 Nos. 12 and 13 of the Subpoena by permitting inspection of each version of its system used during

15 the *Sony* plaintiffs' claim period including all documents regarding the revision history and

16 associated source code no later than March 15, 2019; and (2) produce all remaining responsive

17 documents no later than March 15, 2019.

18        **IT IS SO ORDERED.**

19 Dated: _____

20                          JUDGE OF THE DISTRICT COURT

21
22
23
24
25
26
27
28

1

## CERTIFICATE OF SERVICE

2

I hereby certify that I have made service of the foregoing NOTICE OF MOTION AND

3

MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM* AND PROPOSED

4

ORDER by U.S. Mail and e-mail on February 22, 2019, addressed to:

5

6

Andrew D. Castricone
acastricone@grsm.com
GORDON & REES

7

275 Battery Street, Suite 2000
San Francisco, California

8

*Counsel for Respondent MarkMonitor, Inc.*

9

Jeffrey M Gould

10

jeff@oandzlaw.com
OPPENHEIM + ZEBRAK, LLP

11

4530 Wisconsin Avenue, NW, 5th Floor
Washington, D.C. 20016

12

*Counsel for Plaintiffs in the Sony Litigation*

13

14

Diana Hughes Leiden

15

*Counsel for Cox Communications, Inc. and*

16

*CoxCom, LLC*

17

18

19

20

21

22

23

24

25

26

27

28