

ANDREW D. CASTRICONE
acastricone@grsm.com
DIRECT DIAL: (415) 875-3183

ATTORNEYS AT LAW
275 BATTERY STREET, SUITE 2000
SAN FRANCISCO, CA 94111
(415) 986-5900
WWW.GRSM.COM

June 27, 2019

<u>VIA ECF</u>

Hon. Sallie Kim
USDC ND Cal.
SF Courthouse, Courtroom C-15th Floor
450 Golden Gate Ave.
San Francisco, CA 94102

      Re: ***Cox Communications, Inc., et al. ("Cox") v. MarkMonitor, Inc. ("MarkMonitor")***
           **Case No. 19-mc-80050-SK**

Your Honor:

We take this opportunity to respond to plaintiffs' June 26, 2019 letter brief.[1]

Initially, the Court will recall that MarkMonitor is a **non-party** to the underlying litigation (*Sony Music Entertainment, et al. v. Cox Communications, Inc., et al.*, USDC ED Va. Case No. 1:18-cv-00950-LO-JFA) and, as such, is protected from undue burden or expense in complying with a subpoena in that matter pursuant to Fed. Rules of Civ. Proc. ("FRCP") 45(d).

Procedurally, Cox' letter brief was submitted without any effort by plaintiff's lead or other counsel (*e.g.* Ms. Leiden) to meet and confer in person or telephonically with me (MarkMonitor's lead counsel) in an effort to try and resolve the "dispute" or to seek preparation of a joint letter, as required by Your Honor's Standing Order and Civil L.R. 37-1(a).

Substantively, plaintiff's disingenuous representation of the dispute mischaracterizes MarkMonitor's position, the parties' prior written meet and confer efforts, and misstates the parties' agreement in principle, *i.e.* that the foreign deponent designee and MarkMonitor consented to a *video* deposition on July 1 or 2 in Lithuania within 100 miles of his workplace.

Cox' eleventh hour self-serving proclamation that its counsel will attend the deposition in person (and MarkMonitor and the "Sony Plaintiffs" counsel can do what they want) was never discussed and, at this late date, is unacceptable - unnecessarily and severely prejudicing MarkMonitor and the witness with undue burden and expense that should be non-existent. The witness is a foreign national, ***who has never been deposed before***, and has agreed to modify his own schedule to voluntarily submit to a video only deposition to accommodate Cox' discovery

---

[1] A declaration with exhibits referenced herein without citation will be separately filed per Your Honor's April 18, 2017 Standing Order.

Hon. Sallie Kim
June 27, 2019
Page 2

deadline.  Cox' most recent communications suggest that, in addition to local counsel (who may have a conflict of interest as MarkMonitor is a firm client) it plans to conduct the deposition on a highly technical issue (source code) through a well experienced and tech savvy intellectual property litigator.  MarkMonitor's lead counsel is unavailable to travel to Lithuania for a deposition in less than five days due to various conflicts.  MarkMonitor is informed that there are three other depositions in the underlying case and the plaintiffs' intended counsel is also unavailable.  After the witness and counsel all agreed to the structure of a less formal video deposition, any effort to force the voluntary witness (who is beyond the reach of this Court's jurisdiction) to be examined under the pressure of live testimony with no prior deposition experience – and without counsel present beside him – is unduly fair, prejudicial and creates an undue burden and expense on non-party MarkMonitor, and its designee in violation of Rule 45.

In essence, the "dispute" is completely manufactured, and MarkMonitor and the designee maintain the *video* deposition should proceed as agreed upon, which minimizes any burden and expense under Rule 45(d) and poses absolutely no prejudice to anyone.

**Procedural and Substantive Framework**

On May 9, 2019, this Court granted MarkMonitor's Motion to Quash the original subpoena seeking MarkMonitor's deposition on 24 topics of examination to be addressed by four designees (Sam Bahun (Ohio), Curtis Eisenberger (Idaho), Slawomir Paszkowski (Lithuania) and Jacob Svalstoga (Denmark)). (Dkt.31).

In the Order, the Court noted "[t]he Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts."  [Citation omitted.], Dkt.31, p.2:26-28.  In addressing location, the Court confirmed the deposition location for each corporate designee must be set no more than 100 miles from their residence or place of business.  *Id.,* pp.3:23-4:8. The Court further agreed with MarkMonitor that, as a ***nonparty*** corporate witness, it had the right to designate the person(s) to testify on its behalf, and it would be unreasonable to require MarkMonitor to educate an alternative designee (including a witness on U.S. soil, which here is non-existent) on highly technical topic (*e.g.* source code). *Id.,*p.4:9-23; 5:12-15.

The day after the Order was issued, Cox' counsel sent me a courtesy copy of a revised subpoena, which "reduced" the topics of examination to 10, and which, I was informed, was being served on MarkMonitor's agent, with witness fees.  In the cover email, Cox represented that, in light of anticipated multiple designees, it "will ensure that those depositions are taken within 100 miles of each and on a date and time convenient for those witnesses."  After confirming service, we informed Cox that, in response to the "reduced" areas of examination, we would designate the same individuals, with Mr. Bahun addressing most subjects, but that he could not address engineering/source code issues or specifics regarding financials.  We requested that counsel advise if they intended to only depose Mr. Bahun, or if they also intend to depose Messrs. Eisenberger, Paszkowski and Svalstoga.

Shortly thereafter, and in light of Mr. Bahun dealing with family medical issues, counsel agreed he would be deposed in Los Angeles in conjunction with other travel, and he could be

educated by Mr. Eisenberger to testify on certain subjects. It was further agreed that this Court would be the forum for any disputes and the time to seek relief would be extended.

As for source code and engineering issues, Messrs. Svalastoga and Paszkowksi are foreign residents not subject to U.S. jurisdiction, and we advised Cox we needed to secure their consent to testify and determine deposition location(s). We also referred Cox to standardized procedures for securing testimony from foreign witnesses for cases venued in the United States.

**Meet and Confer Leading to the Agreed Upon Video Deposition**

On or about June 3-5, 2019, the parties discussed that Mr. Bahun could address the issues originally earmarked for Mr. Eisenberger and that Mr. Paszkowski agreed to be deposed and address all source code and engineering issues. However, he was unwilling to voluntarily travel to the U.S and his pre-existing work and pre-planned vacation calendar eliminated his ability to be deposed in June and most, if not all, of July. In response, and in complete disregard for the law and this Court's May 9 Order, Cox again suggested that, given the discovery cut-off in the underlying case, MarkMonitor must designate an individual who was available and educated on the relevant topics. In doing so, Cox cited authorities addressing a *party's* discovery obligations. Cox also challenged MarkMonitor's reference to any application of the Hague Convention or local laws that might pose obstacles to taking depositions in Lithuania (or Denmark), and (again relying on cases involving *parties*), improperly asserted that the depositions could and should be compelled to take place in the U.S.

The following day, June 6, I confirmed the designees would be limited to Messrs. Bahun and Pazskowski and reminded Cox' counsel of this Court's prior rulings. We further noted that, while Mr. Paszkowski agreed to be deposed, he was not subject to personal jurisdiction in the U.S. and did not consent to travel for his deposition. In addition, I clarified our reference to the Hague Convention and local rules to inquire if Cox had made any effort to determine proper protocol and secure any necessary authorization/permission to hold a deposition in Lithuania. We agreed to inquire as to any ability for Mr. Paszkowski to modify his calendar, if at all possible, *for a possible video deposition*. I also alternatively suggested a deposition on written questions, which was rejected.

In response to Cox' claim of urgency, I reminded counsel that this Court directed Cox relief from any deadlines, etc. should be addressed to the Eastern District of Virginia. I have not seen or heard of any effort to do so. My email also included a request as to whether Cox was going to formally modify the subpoena and requested a copy of any amended deposition notice.

**Post June 6, 2019 Agreement to Video Deposition**

After my June 6 email, there was no communication from Cox' counsel. In preparation for Mr. Bahun's June 13 deposition in Los Angeles, we served a formal response and objections to the unmodified subpoena to summarize the above communications and agreements, including our offer to check on a possible video deposition of Mr. Paszkowski. During Mr. Bahun's deposition, I made objections to questions that might seek information regarding source code as potentially calling for information within the scope of Mr. Paszkowski's designation. There was

Hon. Sallie Kim
June 27, 2019
Page 4

no mention of scheduling Mr. Paszkowski's deposition despite the fact that counsel were together for approximately 8 hours.

A week later, on June 20, 2019, Ms. Leiden sent me an email which expressly asked, "Have you determined whether Mr. Paszkowski is available for a deposition *by video* between now and July 2? . . . we would be willing to discuss reasonable costs, if any, associated with setting that up . . . ." [Emphasis added.] The next day, she echoed, "Please let us know about Mr. Paszkowski's availability for deposition *by video* between now and July 2." [Emphasis added.] An hour later, I replied that Mr. Paszkowsi may be amenable to a *video* deposition, but we had not yet seen confirmation that Cox had secured any requisite protocol/received permission for Lithuanian deposition and timing issues should be addressed in ED Virginia.

The following day, Saturday June 22, I was advised, and promptly notified Cox that Mr. Paszkowski could be available for a *video* deposition on July 1 or 2, so long as any appropriate procedures/authorization for doing so in Lithuania were satisfied. In accordance with the agreement for a *video* deposition, I advised Cox that Lithuania was 10 hours ahead of California and requested confirmation of our permission to proceed, as well as deposition logistics.

On June 24, Ms. Leiden confirmed the dates would work and that some anonymous counsel in Lithuania opined a *video* deposition could proceed. She promised to provide deposition logistics and asked whether Mr. Paszkowski speaks English. Despite the agreement on location, Cox alternatively suggested paying for Mr. Paszkowski to travel to London.

The next day, June 25, Ms. Leiden confirmed the deposition would be on July 2 about 2.4 kilometers from Mr. Paszkowski's business, but, *for the very first time* announced Cox was considering taking the deposition *in person* and that "local counsel" confirmed a *live* deposition was appropriate. In response, we rejected the London offer and noted confusion about the live v. video comment given that our agreement was for a video deposition, *i.e.* there would not be an attorney conducting any live examination or defense of the witness. The video protocol was to accommodate the witness/designee and alleviate the burden, time and expense on MarkMonitor. Along those lines, and in addition to seeking actual confirmation of authority to proceed in Lithuania, we again requested logistics, noting I was fine with commencing the deposition on the evening of July 1 (CA time) to allow Mr. Pazskowski the convenience of a morning or afternoon deposition. In response, at approximately 4:06 p.m., Ms. Leiden proclaimed Cox "will attend the deposition in person. . . . We welcome your participation and that of counsel for Plaintiffs in person or, if either of you prefers it, we will arrange for a video hook-up. . . ." I was told to agree within 54 minutes to proceed as Cox demanded, or it would go to Court. Less than two hours later, Ms. Leiden contacted your clerk requesting a telephone conference.

On July 26, at 3:41 a.m., I sent Ms. Leiden a lengthy response questioning the second hand summary attorney opinion, and providing Cox with reference to 7 FAM 921, "Procedures for Oral Examination of Witness" and specifics from the U.S. Dept. of State regarding Lithuania, and reference to Lithuania's 2017 "Country Profile" regarding the "Taking of Evidence by Video-Link Under the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters," which seemed contradictory to Cox' position. During business hours, the "Sony Plaintiffs" counsel and I tried to meet and confer further to no avail. Rather, we

Hon. Sallie Kim
June 27, 2019
Page 5

received repeated inapplicable arguments by email only, the second hand attorney declaration and strident advisements that Cox would appear in person, and MarkMonitor and Plaintiffs "are welcome to attend in person or remotely." Prior to Cox' submission of its brief, Ms. Leiden once again proclaimed they "will appear [in person] in Vilnius . . . next Tuesday, July 2, at 10am to take the deposition of MarkMonitor through Mr. Paszkowski. He is not a "volunteer" – he is the a [sic] corporate designee of MarkMonitor who is subject to the U.S. subpoena power. We are willing to fly Mr. Paszkowski to London, or to anywhere in the continental U.S., for the deposition if you prefer. But unless we hear back from you today on an alternate location, we are going forward as planned in Vilnius. Let me know if and how you plan to participate. . . . If you are concerned that there will not be a "level playing field" if Winston & Strawn appears in person, then you should attend. . . . let me know if and how Plaintiffs intend to participate. . . ."

   To borrow Ms. Leiden's words, and presuming the deposition may proceed in Lithuania under the applicable rules, etc., the only "level playing field" at this juncture that comports with FRCP 45(d) mandates that the deposition proceed as originally planned, with all counsel appearing via videoconference only.

              Respectfully submitted,

              Andrew D. Castricone