ANDREW D. CASTRICONE (SBN: 154607)
acastricone@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone:   (415) 986-5900
Facsimile:   (415) 262-3726

Attorneys for Defendant/Respondent
MARKMONITOR, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COX COMMUNICATIONS, INC. and COXCOM, LLC<br><br>Plaintiffs<br><br>vs.<br><br>MARKMONITOR, INC.,<br><br>Defendant. | CASE NO. CV 19 80 050MISC SK<br><br>**DECLARATION OF ANDREW D. CASTRICONE IN SUPPORT OF LETTER BRIEF (DKT. 34)**<br><br>**U.S. Magistrate Judge Sallie Kim** |

I, Andrew D. Castricone, declare as follows:

1. I am an attorney, admitted to practice in all state and federal courts in California and New York[1], all state courts in Massachusetts (inactive), and I am a partner of the law firm of Gordon Rees Scully Mansukhani, LLP, counsel of record for Defendant MarkMonitor, Inc. ("MarkMonitor") in the above-entitled matter. I have personal knowledge of the facts set forth herein and, if necessary, I would and could competently testify thereto if called as a witness in this matter.

2. MarkMonitor is a ***non-party*** to the underlying litigation (*Sony Music Entertainment, et al. v. Cox Communications, Inc., et al.*, USDC ED Va. Case No. 1:18-cv-00950-LO-JFA) and, as such, is protected from undue burden or expense in complying with a subpoena in that matter pursuant to Fed. Rules of Civ. Proc. ("FRCP") 45(d).

---

[1] Excluding Second Circuit Court of Appeals.

3. On May 9, 2019, this Court granted MarkMonitor's Motion to Quash plaintiff's subpoena seeking MarkMonitor's deposition on 24 topics of examination to be addressed by four designees (Sam Bahun (Ohio), Curtis Eisenberger (Idaho), Slawomir Paszkowski (Lithuania) and Jacob Svalstoga (Denmark)). (Dkt.31). A true and correct copy of the Order is attached for the Court's convenience as Exhibit "A." In the Order, the Court noted "[t]he Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." [Citation omitted.], Dkt.31, p.2:26-28. In addressing location, the Court confirmed the deposition location for each corporate designee must be set no more than 100 miles from their residence or place of business. *Id.,* pp.3:23-4:8. The Court further agreed with MarkMonitor that, as a ***nonparty*** corporate witness, it had the right to designate the person(s) to testify on its behalf, and it would be unreasonable to require MarkMonitor to educate an alternative designee (including a witness on U.S. soil, which here is non-existent) on highly technical topic (*e.g.* source code). *Id.,*p.4:9-23; 5:12-15.

4. The day after the Order was issued, Cox' counsel sent me a courtesy copy of a revised subpoena, which "reduced" the topics of examination to 10, and which, I was informed, was being served on MarkMonitor's agent, with witness fees. In the cover email, Cox represented that, in light of anticipated multiple designees, it "will ensure that those depositions are taken within 100 miles of each and on a date and time convenient for those witnesses." *See* Cox, Ex. "C," Dkt. 32-3, p.31. After confirming service, we informed Cox that, in response to the "reduced" areas of examination, we would designate the same individuals, with Mr. Bahun addressing most subjects, but that he could not address engineering/source code issues or specifics regarding financials. *Id.* at pp.27-28. We requested that counsel advise if they intended to only depose Mr. Bahun, or if they also intend to depose Messrs. Eisenberger, Paszkowski and Svalastoga. *Ibid.*

5. Shortly thereafter, and in light of Mr. Bahun dealing with family medical issues, counsel agreed he would be deposed in Los Angeles in conjunction with other travel, and he could be educated by Mr. Eisenberger to testify on certain subjects. It was further agreed that this Court would be the forum for any disputes and the time to seek relief would be extended. As

CASTRICONE DEC. IN SUPPORT OF LETTER BRIEF     CASE NO. CV 19 80 050MISC SK

1  for source code and engineering issues, Messrs. Svalastoga and Paszkowksi are foreign residents
2  not subject to U.S. jurisdiction, and we advised Cox we needed to secure their consent to testify
3  and determine deposition location(s).  We also referred Cox to standardized procedures for
4  securing testimony from foreign witnesses for cases venued in the United States.  *See, generally,*
5  Cox, Ex. "C," Dkt. 32-3, pp.20-28.

6      6.  On or about June 3-5, 2019, the parties discussed that Mr. Bahun could address
7  the issues originally earmarked for Mr. Eisenberger and that Mr. Paszkowski agreed to be
8  deposed and address all source code and engineering issues.  *See* Cox, Ex. "C," Dkt. 32-3, pp.18-
9  20.  However, he was unwilling to voluntarily travel to the U.S and his pre-existing work and
10 pre-planned vacation calendar eliminated his ability to be deposed in June and most, if not all, of
11 July.  *Ibid.*  In response, and in complete disregard for the law and this Court's May 9 Order, Cox
12 again suggested that, given the discovery cut-off in the underlying case, MarkMonitor must
13 designate an individual who was available and educated on the relevant topics. In doing so, Cox
14 cited authorities addressing a party's discovery obligations.  *Ibid.*  Cox also challenged
15 MarkMonitor's reference to any application of the Hague Convention or local laws that might
16 pose obstacles to taking depositions in Lithuania (or Denmark), and (again relying on cases
17 involving parties), improperly asserted that the depositions could and should be compelled to
18 take place in the U.S.  *Ibid.*

19     7.  On June 6, I confirmed the designees would be limited to Messrs. Bahun and
20 Pazskowski and reminded Cox' counsel of this Court's prior rulings.  *See* Cox, Ex. "C," Dkt. 32-
21 3, pp.15-18. We further noted that, while Mr. Paszkowski agreed to be deposed, he was not
22 subject to personal jurisdiction in the U.S. and did not consent to travel for his deposition.  *Ibid.*
23 In addition, I clarified our reference to the Hague Convention and local rules to inquire if Cox
24 had made any effort to determine proper protocol and secure any necessary
25 authorization/permission to hold a deposition in Lithuania. *Ibid.*  We agreed to inquire as to any
26 ability for Mr. Paszkowski to modify his calendar, if at all possible, for a possible video
27 deposition. I also alternatively suggested a deposition on written questions, which was rejected.
28 *Ibid.*  In response to Cox' claim of urgency, I reminded counsel that this Court directed Cox

1  relief from any deadlines, etc. should be addressed to the Eastern District of Virginia.  I have not
2  seen or heard of any effort to do so.  *Ibid.*  My email also included a request as to whether Cox
3  was going to formally modify the subpoena and requested a copy of any amended deposition
4  notice.  *Ibid.*

5      8.    After my June 6 email, there was no communication from Cox' counsel.  In
6  preparation for Mr. Bahun's June 13 deposition in Los Angeles, we served a formal response and
7  objections to the unmodified subpoena to summarize the above communications and agreements,
8  including our offer to check on a possible video deposition of Mr. Paszkowski.  A true and
9  correct copy of the response and objections is attached hereto as Exhibit "B."  During Mr.
10 Bahun's deposition, I made objections to questions that might seek information regarding source
11 code as potentially calling for information within the scope of Mr. Paszkowski's designation.
12 ***There was no mention of scheduling Mr. Paszkowski's deposition despite the fact that counsel***
13 ***were together for approximately 8 hours.***

14     9.    A week later, on June 20, 2019, Ms. Leiden sent me an email which expressly
15 asked, "Have you determined whether Mr. Paszkowski is available for a deposition ***by video***
16 between now and July 2?  . . . . we would be willing to discuss reasonable costs, if any,
17 associated with setting that up . . . ." [Emphasis added.]  *See* Cox, Ex. "C," Dkt. 32-3, p.15.  The
18 next day, she echoed, "Please let us know about Mr. Paszkowski's availability for deposition ***by***
19 ***video*** between now and July 2." [Emphasis added.]  *Id.* at p.14.  An hour later, I replied that Mr.
20 Paszkowsi may be amenable to a ***video*** deposition, but we had not yet seen confirmation that
21 Cox had secured any requisite protocol/received permission for Lithuanian deposition and timing
22 issues should be addressed in ED Virginia.  *Id.,* pp.13-14.

23     10.    The following day, Saturday June 22, I was advised, and promptly notified Cox
24 that Mr. Paszkowski could be available for a ***video*** deposition on July 1 or 2, so long as any
25 appropriate procedures/authorization for doing so in Lithuania were satisfied. *See* Cox, Ex. "C,"
26 Dkt. 32-3, p.12-13.  In accordance with the agreement for a ***video*** deposition, I advised Cox that
27 Lithuania was 10 hours ahead of California and requested confirmation of our permission to
28 proceed, as well as deposition logistics.  *Ibid.*

**Gordon Rees Scully Mansukhani, LLP**
275 Battery Street, Suite 2000
San Francisco, CA  94111

Page 4

CASTRICONE DEC. IN SUPPORT OF LETTER BRIEF      CASE NO. CV 19 80 050MISC SK

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

1   11. On June 24, Ms. Leiden confirmed the dates would work and that some anonymous counsel in Lithuania opined a video deposition could proceed. She promised to provide deposition logistics and asked whether Mr. Paszkowski speaks English. Despite the agreement on location, Cox alternatively suggested paying for Mr. Paszkowski to travel to London.  *See* Cox, Ex. "C," Dkt. 32-3, p.12.

12. The next day, June 25, Ms. Leiden confirmed the deposition would be on July 2 about 2.4 kilometers from Mr. Paszkowski's business, ***but, for the very first time announced Cox was considering taking the deposition in person and that "local counsel" confirmed a live deposition was appropriate.*** *See* Cox, Ex. "C," Dkt. 32-3, p.10-11.  In response, we rejected the London offer and noted confusion about the live v. video comment given that our agreement was for a video deposition, *i.e.* there would not be an attorney conducting any live examination or defense of the witness. *Id.*, at p.10. In basic terms, the video protocol was to accommodate the witness/designee's agreement to modify his schedule, and to alleviate the burden, time and expense on MarkMonitor. *Ibid.* Along those lines, and in addition to seeking actual confirmation of authority to proceed in Lithuania, we again requested logistics, noting I was fine with commencing the deposition on the evening of July 1 (CA time) to allow Mr. Pazskowski the convenience of a morning or afternoon deposition. *Ibid.*

13. In response, at approximately 4:06 p.m. (PT), Ms. Leiden proclaimed Cox "will attend the deposition in person. . . . We welcome your participation and that of counsel for Plaintiffs in person or, if either of you prefers it, we will arrange for a video hook-up. . . ." *See* Cox, Ex. "C," Dkt. 32-3, p.9.  I was told to agree within 54 minutes to proceed as Cox demanded, or it would go to Court. *Ibid.*  Less than two hours later, Ms. Leiden contacted Magistrate Judge Kim's clerk requesting a telephone conference. *Ibid.*

14. Thereafter, both the Sony Plaintiffs' counsel, Jeff Gould, and I attempted to meet and confer further with Cox' counsel.  As Mr. Gould aptly noted:

> Given that Cox has already inspected MarkMonitor's source code and taken an all-day Rule 30(b)(6) deposition of a MarkMonitor witness, the exercise proposed below seems unnecessary, wasteful and unduly complicated.  Beyond the challenge and cost of coordinating a deposition in Lithuania for a U.S. case under optimal circumstances, the timing further complicates this matter.  July 2 is the

last day of discovery and three depositions are already scheduled that day.  If Cox nevertheless insists on pushing forward with the proposed deposition of MarkMonitor's Lithuanian witness, Plaintiffs respectfully request that Cox agree to proceed by video (or phone), as MarkMonitor has agreed.  Given the three depositions scheduled for July 2 and the short notice between now and July 2, Plaintiffs are not available to travel to Lithuania for the proposed deposition and should not be disadvantaged by Cox's attorneys appearing in person.  Furthermore, additional motion practice over the logistics of the proposed deposition seems wasteful and unnecessary, particularly given MarkMonitor's agreement to proceed voluntarily by video.

*See* Cox, Ex. "C," Dkt. 32-3, p.8.

15. On July 26, at 3:41 a.m., I sent Ms. Leiden a lengthy response questioning the second hand summary attorney opinion, and providing Cox with reference to 7 FAM 921, "Procedures for Oral Examination of Witness" and specifics from the U.S. Dept. of State regarding Lithuania, and reference to Lithuania's 2017 "Country Profile" regarding the "Taking of Evidence by Video-Link Under the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters," which seemed contradictory to Cox' position, and to which they have provided no explanation.  *See* Cox, Ex. "C," Dkt. 32-3, pp.5-7.  A true and correct copy of the "Country Profile" is attached hereto as Exhibit "C."  Cox failure to explain how these procedures are inapplicable is troubling, especially since Cox argues that Mr. Paszkowski is not a voluntary witness.

16. Later on June 26, during business hours, Mr. Gould and I tried to meet and confer via further email  - to no avail.  *See* Cox, Ex. "C," Dkt. 32-3, pp.2-3.  As Mr. Gould noted, and we agreed,

Plaintiffs continue to believe this deposition is unnecessary and wasteful for the reasons described below and on the phone today.  To date, MarkMonitor has agreed to provide a witness voluntarily if all parties attend by video.  Your insistence on different terms seems designed to ensure the deposition does *not* occur and to manufacture a record for a future preclusion motion.  If Cox's interest is in actually taking the deposition, rather than manufacturing a record for a preclusion motion (which we are confident would fail), we encourage you to reconsider your insistence on doing so in person.  We're at the tail end of a long discovery road and it's neither feasible nor practical for Plaintiffs to be in Lithuania July 2 given at least three other depositions that day, the short notice between now and July 2, and myriad other case activity as the discovery period concludes.  Plaintiffs have no problem with the deposition occurring and intend to participate by video if it does occur, but are concerned by the unlevel playing field if Cox attorneys are there in person with no attorney present for Plaintiffs and no attorney present with the witness.  Let's work together to figure this out

cooperatively.

*See* Cox, Ex. "C," Dkt. 32-3, p.3.

17. Instead of trying to figure it out cooperatively, we received repeated inapplicable arguments by email only, the second hand attorney declaration and strident advisements that Cox would appear in person, and MarkMonitor and Plaintiffs "are welcome to attend in person or remotely." *See* Cox, Exs. "B," "C," Dkt. 32-3, pp.3-4.

18. Prior to Cox' submission of its brief, Ms. Leiden once again proclaimed they

> will appear [in person] in Vilnius . . . next Tuesday, July 2, at 10am to take the deposition of MarkMonitor through Mr. Paszkowski.  He is not a "volunteer" – he is the a [sic] corporate designee of MarkMonitor who is subject to the U.S. subpoena power.  We are willing to fly Mr. Paszkowski to London, or to anywhere in the continental U.S., for the deposition if you prefer.  But unless we hear back from you today on an alternate location, we are going forward as planned in Vilnius.  Let me know if and how you plan to participate. . . . If you are concerned that there will not be a "level playing field" if Winston & Strawn appears in person, then you should attend. . . . let me know if and how Plaintiffs intend to participate. . . .

*See* Cox, Ex. "C," Dkt. 32-3, p.2.

19. To borrow Ms. Leiden's words, and presuming the deposition may proceed in Lithuania under the applicable rules, etc., the only "level playing field" at this juncture that comports with FRCP 45(d) mandates that the deposition proceed as originally planned, with all counsel appearing via videoconference only.

20. MarkMonitor has already produced Mr. Bahun for a full day of deposition, which allowed Cox to fully explore the ins and outs of the MarkMonitor system employed by Plaintiffs for the detection of copyright infringement activity and ensuing notification, etc.  Pursuant to the protective order in the underlying case, MarkMonitor has already made its source code available for inspection near Washington, D.C.  The inspection was attended by Mr. Svalastoga, who Cox could have served with a subpoena while he was in the U.S., but they chose not to.  In fact, I expected him to be served at the time and was greatly surprised that Cox' counsel did not take advantage of that opportunity.  Cox and the Plaintiffs both have retained experts to opine on any source code issues, if any.  The requested printed portions of the source code have also been produced.

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1. 21. Mr. Paszkowsi, a foreign national, has been designated as MarkMonitor's designee on the source code issue. As he does not live or work in the United States, and he and MarkMonitor are not parties to the underlying case, the Court lacks jurisdiction to compel his personal testimony, in Lithuania or elsewhere. His June and July schedule are congested with pre-existing work and vacation conflicts. He voluntarily agreed to modify his schedule and submit to a video deposition to afford Cox an opportunity to depose him prior to the discovery completion deadline, which Cox chose not to extend. Cox agreed to conduct the deposition with the witness in Lithuania and counsel attending via video. There was never any discussion or request by Cox or anyone else for a live deposition in Lithuania, nor was there ever an offer to do so. I have made myself available to attend the deposition remotely at "off hours" in California to accommodate a more convenient time for the witness. I understand the plaintiffs have also done so, and had presumed that Cox has also made such arrangements.

22. Though I question the strength of his declaration, I have been informed that the attorney Cox retained in Lithuania has been described as the "best" attorney in that country. *At the same time, I am informed by MarkMonitor it is a client of the Lithuanian law firm that Cox has retained, and there may be a conflict of interest.*

23. As part of the scheduling of the telephone conference on this dispute, Ms. Leiden has indicated that her Chicago based intellectual property partner, Michael Brody, is planning on taking the deposition. Mr. Brody's profile demonstrates that he is a highly experienced and tech savvy litigator. After agreeing to participate in, and expressly inviting a video-only deposition, Cox' eleventh hour demand that Mr. Paszkowski, *who has never been deposed before,* submit to a live deposition before such attorneys without his own counsel present (and even suggesting that we may not participate at all) is in bad faith. Cox' knowing that there are three other depositions in their case on that date, coupled with presumed knowledge that I am also unavailable, is clearly an attempt to take advantage of the situation and likely lead to the intimidation of the witness – again a foreign national who is appearing in a legal proceeding without experience, on a purely voluntary basis. I am, in fact, unable to attend a deposition in Lithuania on Tuesday due to a variety of pre-existing conflicts and travel restrictions, as well as the burden and expense my

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  client will fact for last minute travel expenses to such a distant location.  I am also concerned

2  that, if Mr. Paszkowski is informed that it will be a live deposition, and there is an issue on

3  attendance by his counsel, he may retract his agreement to be deposed – which is of no benefit to

4  anyone.

5      24.    Based on the foregoing, it is my opinion that this dispute is not really a dispute at

6  all, and that the deposition, if it is to go forward, should simply proceed as originally intended.

7      I declare under penalty of perjury under the laws of the United States of America that the

8  foregoing is true and correct.  Executed on June 27, 2019.

                                            /s/    Andrew D. Castricone
                                          Andrew D. Castricone

**Gordon Rees Scully Mansukhani, LLP**
275 Battery Street, Suite 2000
San Francisco, CA  94111